

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
RICKY LAND, :
:
                     Plaintiff, :
: 07 Civ. 8070 (GEL)
  -v.- :
: **OPINION AND ORDER**
D. KAUFMAN and M.J. MILLER, :
:
                     Defendants. :
:
-------------------------------------------------------------x

Ricky Land, pro se.

Andrew M. Cuomo, Attorney General of the State
of New York (Donald Nowve, Assistant Attorney
General, of Counsel), New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

      Pro se plaintiff Ricky Land, a prisoner in the custody of the New York State Department of Correctional Services ("DOCS"), brings suit pursuant to 42 U.S.C. § 1983, charging that he was the victim of excessive force applied by the defendant correction officers D. Kaufman and M.J. Miller during an altercation over a magazine on June 3, 2005, at the Green Haven Correctional Facility. Defendants move for summary judgment on the ground that plaintiff failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PRLA"). The motion will be denied.

      Under the PLRA, prisoners "confined in any jail, prison, or other correctional facility" may not bring any action under federal law with respect to prison conditions "until such administrative procedures as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Pooler v. Nussle, 534 U.S. 516, 532 (2002). This rule applies regardless of whether the relief sought is obtainable through administrative channels. Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009). The PLRA mandates exhaustion as a statutory precondition to bringing a federal suit, Richardson v. Goord, 347 F.3d 431, 433-34 (2d Cir. 2003), but does not specify the mechanisms for exhaustion, which are defined by the procedural rules of the relevant prison system. Jones v. Bock, 549 U.S. 199, 218 (2007). "The exhaustion inquiry thus requires [a] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal, 558 F.3d at 125.

It is well-established that "[t]he PLRA does not require exhaustion of all administrative remedies, but only those that are 'available' to the inmate." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004), quoting 42 U.S.C. § 1997e(a). Thus, "[a] court may not dismiss for failure to exhaust administrative remedies unless . . . [it] determines that such remedies are available." Abney, 380 F.3d at 668, quoting Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999). "When determining whether an administrative remedy is available, courts 'should be careful to look at the applicable set of grievance procedures, whether city, state or federal.'" Abney, 380 F.3d at 668, quoting Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003). The first step in assessing the availability of an administrative remedy created by statute or regulation "is purely a question of law. The answer depends on the meaning of the relevant statute or regulation." Snider, 199 F.3d at 114.[1]

---

[1] Even remedies made generally available by statute or regulation, however, may be unavailable to a particular inmate under certain conditions. See Hemphill v. New York, 380 F.3d 680, 686-88 (2d Cir. 2004).

2

The particulars of what remedies were available to plaintiff – and thus required to be exhausted – in this case must be determined vis-a-vis the procedures existing in 2005, when the alleged incident occurred. See Jones v. Bock, 549 U.S. 199, 218 (2007); Espinal v. Goord, 558 F.3d at 125. At that time, DOCS maintained a three-step inmate grievance program. N.Y. Correct. Law § 139; N.Y. Comp. Codes R & Regs. tit. 7, § 701.1-701.16 (2005);[2] see also Hemphill, 380 F.3d at 682-83.[3] Step one required an inmate to file a grievance with the inmate grievance resolution committee ("IGRC") within fourteen days of the alleged incident. N.Y. Comp. Codes R & Regs. tit. 7, § 701.7(a)(1). The IGRC was charged with resolving the grievance within seven working days of receipt and communicating its decision to the grievant within two days thereafter. Id. § 701.7(4). Step two gave an inmate four days to appeal the IGRC's decision to the facility superintendent, who had five to ten days to act upon it, depending on the type of grievance. Id. § 701.7(b). Third and finally, an inmate had four days to appeal the superintendent's decision to the central office review committee ("CORC"), which in turn had twenty days to respond. Id. § 701.7(c).[4] If at any stage, an inmate did not receive a timely

---

[2] Unless otherwise noted, all citations to these regulations will be to the version in effect in 2005.

[3] DOCS continues to maintain this three-step program; however, the details changed with various amendments made to the regulations effective June 2006. See N.Y. Comp. Codes R & Regs. tit 7, §§ 701.1-701.11 (2009); see also Espinal, 558 F.3d at 125.

[4] DOCS regulations also provided an expedited process for grievances alleging harassment by DOCS officials. Id. § 701.11. Upon being filed with the IGRC, harassment grievances were promptly sent to the superintendent, who was required to render a decision within twelve working days. Id. Although plaintiff's grievance seemingly falls within this category (see § 701.2(e) defining a "harassment grievance" as one alleging "employee misconduct meant to annoy, intimidate or harm an inmate"), it was not treated as such and was instead processed in the ordinary course by the IGRC. The regulations further provided special procedures for inmates grieving from special housing units ("SHU"), id. § 701.13, where plaintiff was confined following the altercation with defendants. The SHU procedures are not a

response from the relevant DOCS entity, he was entitled to proceed directly to the next step. Id. § 701.8.

Defendants do not dispute that plaintiff satisfied step one. On June 7, 2005 – four days after the altercation – plaintiff timely grieved the issue, complaining that he "was assaulted by officer[s] M.J. Miller and officer Kaufman." (Land Aff. Ex. B.) The grievance was received by the Green Haven IGRC on June 15 (id.), and defendants concede that it provided DOCS with enough information concerning the alleged use of force to allow it to take appropriate responsive measures. (Defs.' Mem. 3 n.5, citing Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004).) Immediately following the expiration of the IGRC's time to act upon plaintiff's grievance (seven working days from receipt) – but before the IGRC in fact acted on it – plaintiff was transferred to another DOCS facility, the Attica Correctional Facility. (Land Supp. Aff. Ex. K (documenting transfer on June 27).) In plaintiff's absence, on July 5 (or possibly July 8; the handwriting is unclear), the Green Haven IGRC disposed of plaintiff's grievance. (Land Aff. Ex. J; D. R. 56.1 Stmt. ¶ 8.) In doing so, the IGRC did not address plaintiff's allegation of assault by defendants; rather, as the only action requested by plaintiff was the return of his property, the IGRC focused on that, and essentially found the issue moot as plaintiff had signed for his property on June 8 (three days after the incident and one day after submission of the grievance). (Land Aff. Ex. J.) Following the IGRC's response, the superintendent's office administratively marked the grievance as "closed at committee." (Id.; D. R. 56.1 Stmt. ¶ 10.)

---

model of clarity, particularly with regard to whether and when they alter the time limits outlined above. See id. § 701.13(f). Fortunately, however, the specifics of these procedures are immaterial for purposes of this case.

Plaintiff asserts that he was not informed of the IGRC's decision, or advised that his grievance had been terminated. (Land Aff. at 1.) In any event, is undisputed that plaintiff did not appeal to the Green Haven superintendent, step two in the administrative process, until March 2007, over a year and a half after he first submitted the grievance. (Land Dep. 60-61; 64, 68-69; D. R. 56.1 Stmt. ¶¶ 12, 16.) It is also undisputed that, upon being informed that this appeal was untimely and could not be pursued to the next level, plaintiff did not attempt to appeal to the CORC, the third and final step, but rather, as instructed, initiated a new grievance concerning the handling of his old grievance. (Land Dep. 70-72; Land Aff. Ex. I; D. R. 56.1 Stmt. ¶¶ 18, 22.) As a result, defendants argue that plaintiff failed to exhaust administrative remedies by not timely pursuing step two and by abdicating step three.

Plaintiff offers a variety of reasons why he did not pursue an appeal for nearly two years, including that the IGRC did not timely process his grievance; that he never received the IGRC's belated response; that he was being harassed by DOCS' officials and feared for his life; and that he pursued informal avenues of relief by seeking help from the Inspector General, which a jailhouse paralegal erroneously told him was an adequate substitute for the formal administrative procedure. It is unnecessary, however, to address the merits of plaintiff's various contentions, for plaintiff in fact did everything the then-existing DOCS regulations required he do in light of his transfer to a new correctional facility while his grievance was pending before the IGRC.

Although neither party calls attention to it, § 701.3(k) of the regulations in effect at the time (a provision substantially altered by the June 2006 amendments) rendered the administrative appeals defendants claim plaintiff should have taken unavailable. That section, titled "appeal after transfer," provided:

>    (1) An inmate transferred to another facility may continue an appeal of a departmental grievance.
>
>    (2) An institutional grievance brought by an inmate who was transferred, released, or paroled must be investigated and brought to an IGRC hearing.
>
>        (i) If the IGRC majority determines that the grievance is moot because it only affects the specific grievant or the issue being grieved has been decided by the central office review committee (CORC) within a year from the date the instant grievance was filed, the IGRC shall dismiss and close the grievance. A copy of the CORC decision relied upon shall be filed with the dismissed grievance and cited within the IGRC decision.
>
>        (ii) If the grievance does affect other members of the facility population and has not been reviewed by the CORC within the past year, the IGRC shall provide a recommendation on how to resolve the matter and forward the case to the superintendent for a determination.
>
>    (3) Upon receipt of the superintendent's decision, the IGP supervisor shall prepare a case history and record and forward all case materials to the CORC for a final disposition.
>
>    (4) An institutional grievance brought by an inmate who is thereafter transferred, released or paroled which is pending at the superintendent's level, is to be processed according to the provisions of subparagraph (2)(ii) of this subdivision.

N.Y. Comp. Codes R & Regs. tit. 7, § 701.3(k) (2005).[5]

This provision, which specifically addresses appeals of grievances by inmates who have been transferred out of the institution in which the grievance was filed, precluded inmates from appealing "institutional" grievances affecting the grievant alone to the superintendent or beyond after transfer to another facility – the very circumstances facing plaintiff here. The regulation

---

[5] The corresponding provision in the current regulations, in sharp contrast, provides, in relevant part: "An inmate transferred to another facility may continue an appeal of any grievance," and provides specific instructions on how to do so. Id. § 701.6(h)(2) (2009).

expressly provides that a transferred inmate may continue to appeal a "departmental" grievance, defined in § 701.2 as one "which affects an inmate during his/her confinement at various facilities throughout the department." Id. § 701.3(k)(1). Plaintiff's grievance, however, which concerned an alleged assault by particular correctional officers at the Green Haven facility, is clearly institutional, rather than departmental, in nature, as an "institutional grievance" is defined as one "in which the grievant is only affected as long as he/she remains a resident of the facility in which the grievance was filed." Id. § 701.2.

The obvious negative implication of § 701.3(k)(1) – that an institutional grievance may *not* be appealed after transfer – is made explicit in the following subsections. An institutional grievance must be brought before the IGRC despite the grievant's transfer. Id. § 701.3(k)(2). If, however, the grievance "only affects the specific grievant," the IGRC is instructed to "dismiss and close the grievance." Id. § 701.3(k)(2)(i). No provision is made for further appeal of the closing of the grievance. If, in contrast, the grievance presents an open issue that affects other inmates of the same institution, further proceedings are once again specifically authorized. In that case, the IGRC is instructed to pass the matter to the superintendent for determination, id. § 701.3(k)(2)(ii), which determination is in turn forwarded to the CORC "for a final disposition," id. § 701.3(k)(3). Finally, § 701.3(k)(4) deals with the situation in which an inmate has already appealed the denial of his grievance by the IGRC to the superintendent before being transferred: in the case of an institutional grievances affecting only the grievant, the matter is to be processed "according to the provisions of subparagraph (2)(ii)." That is, it should be treated as if it affected other inmates: decided by the superintendent, and then automatically forwarded to the CORC.

Thus, the scheme of § 701.3(k), in effect at the time of plaintiff's grievance, plainly limited a transferred inmate's ability to appeal the denial of a grievance to complaints about conditions that would continue to affect him at his new facility. Where the grievance concerned matters at his former institution, further review of the grievance was out of the inmate's hands: if the "institutional" grievance pertained only to him, it was essentially treated as moot and closed; if it concerned prison conditions affecting other inmates as well, provision was made for the grievance to be resolved at the superintendent and CORC level, without the need for inmate appeals.

Under this scheme, plaintiff's grievance, which was an institutional grievance affecting only himself, and which was still pending before the IGRC at the time of plaintiff's transfer,[6] should have been closed as moot pursuant subsection (k)(2)(i). The IGRC, however, did not address the fact that plaintiff had been transferred from Green Haven or assess the whether the transfer mooted the grievance. Rather, the IGRC made essentially a substantive mootness finding based on the fact that plaintiff had at that point obtained all the relief sought (the return of his property). Despite the fact that the IGRC appears to have overlooked section 701.3(k), it is clear that this provision nevertheless terminated plaintiff's administrative remedies following the IGRC's disposition. The strong negative implication of subsection (k)(1), which authorized

---

[6] Although the IGRC's seven working day time limit in which it had to act on plaintiff's grievance expired the business day prior to plaintiff's transfer (the IGRC received plaintiff's grievance on June 15; seven business days later is Friday, June 24; plaintiff was transferred the following Monday, June 27), the matter was in fact still pending before the IGRC, as evidenced by the fact that the IGRC did belatedly act on plaintiff's grievance in early July. Thus, although the regulations generally permit an inmate to proceed directly to the next step upon the IGRC's inaction, plaintiff's first opportunity to appeal the IGRC's untimeliness would, at the earliest, have been the very day he was transferred. Plaintiff's grievance clearly was not pending before the superintendent at the time of plaintiff's transfer, making subsection (k)(4) inapplicable.

8

appeals by transferred inmates only in connection with departmental grievances, in conjunction with the absence of any provision for an appeal to the superintendent of an institutional grievance once the IGRC dismissed it, and the express carve-out in subsection (k)(4) for further review by the CORC in the case of an institutional grievance already pending before the superintendent at the time of transfer, leads to the inescapable conclusion that § 701.3(k) terminated an inmate's ability appeal to the superintendent, unless the grievance is either departmental or concerns others (and then, only if the issue has not recently been addressed by the CORC).

As plaintiff's grievance neither was departmental in nature nor concerned other Green Haven inmates, steps two and three of the DOCS' grievance program – appeal to the superintendent and the CORC, respectively – both became unavailable to plaintiff following his transfer to Attica.[7] Plaintiff thus cannot be faulted for failing to take such steps and plaintiff, in timely grieving this matter to the IGRC, fully exhausted the administrative remedies available to him in satisfaction of the PLRA. See Hemphill, 380 F.3d at 686. ("To the extent that the plaintiff lacked 'available' administrative remedies, the PLRA's exhaustion requirement is inapplicable.").

Defendants assert – without mention of section 701.3(k) – that plaintiff's transfer to Attica does not excuse his failure to exhaust because plaintiff at all times remained in DOCS' custody and "[a]s long as [the prisoner] was in the custody of the agency against which he had grievances, . . . he was required to use available grievance procedures.'" (D. Supp. Reply 3, quoting Berry v. Kerick, 366 F.3d 85, 88 (2d Cir. 2004).) As a general proposition, this is true:

---

[7] An appeal to levels two and three remained unavailable to plaintiff following the repeal of § 701.3(k) in June 2006, since by that time, any appeal would have already been untimely.

to the extent any administrative remedies remained available to plaintiff following his transfer to Attica, he would have been required to pursue them. But Berry – which involved a different prison system (the New York City system), not to mention a vastly different set of factual predicates, 366 F.3d at 87-88 – is of no avail to defendants here since, as demonstrated above, the relevant DOCS procedures cut off plaintiff's ability to pursue the matter beyond the IGRC.[8]

Finally, to the extent the IGRC's action is considered a dismissal of plaintiff's grievance, the regulations arguably provided plaintiff a subsidiary mechanism to challenge such dismissal.[9] Under § 701.7(a)(5)(iv), a grievant who believed that the IGRC's dismissal was unauthorized had seven days from receipt of the decision to seek review by the facility's inmate grievance program supervisor ("IGPS"), who would return the matter to the IGRC to the extent he agreed

---

[8] The 2005 regulations' approach to inmate grievances made perfect sense. Unlike civil actions for damages under § 1983, internal prison grievance procedures cannot award damages in compensation for past abuses. Rather, they are designed primarily to provide prospective relief by addressing inmate objections to ongoing prison conditions. Thus, if an inmate complains about, for example, his own need for specific accommodations to a disability given the nature of a particular facility (an institutional grievance affecting only himself), the grievance is indeed mooted when the inmate is transferred to a different, and perhaps more accommodating, facility. If, on the other hand, the inmate complains of the allegedly unhealthy quality of the meals at the institution, that grievance affects others as well, and remains a problem to be addressed by the superintendent even after the grievant leaves, although the grievant himself no longer has standing to pursue the matter. And, finally, a grievance about a department-wide practice is unaffected by the inmate's transfer, and should be permitted to be pressed to final resolution by the grievant himself.

[9] It is not clear that the IGRC "dismissed" plaintiff's grievance within the meaning of the regulation. When dismissing a grievance, the IGRC was expressly required to "clearly cite the portions of [the regulations] which provide the basis for dismissal" id. § 701.7(a)(5)(ii), which the IGRC did not do, nor did it ever use the word "dismiss" (or any variant of it). It is not clear that the IGRC had the authority to dismiss other than for mootness because of the transfer, which it did not do. The regulations provided five permissible bases for dismissal. Id. § 701.7(a)(5)(i). The only one of these grounds potentially applicable is that "the grievant has not been or will not be personally affected by the issue in his/her complaint." Id. § 701.7(a)(5)(i)(b). It is not clear that the IGRC's finding that plaintiff signed for his property carries this meaning.

10

that the dismissal was improper.[10] Although plaintiff did not challenge the IGRC's action in this manner, plaintiff's non-pursuit of this subsidiary layer of review – which was explicitly part of step one in the three step program, see generally id. § 701.5(a) – does not result in non-exhausted remedies for the purposes of the PLRA. As noted above, defendants do not challenge plaintiff's compliance with step one but instead contend that plaintiff's case must be dismissed for failure to comply with steps two and three insofar as he did not timely appeal to the superintendent or to CORC. Exhaustion of administrative remedies is an affirmative defense that defendants bear the burden to raise and prove. Jones, 549 U.S. at 204, 211-17. Thus, to the extent that defendants do not challenge plaintiff's failure to seek this subsidiary review by the IGPS, that failure has been waived and may not serve as the basis for dismissal.[11]

Accordingly, as plaintiff fully exhausted the remedies DOCS made available to him, defendants' motion for summary judgment (Doc. #21) is denied. Trial in the matter will begin on November 16, 2009; a joint pre-trial order, along with any motions in limine, requests to charge, and voir dire requests, will be due on October 16, 2009.

---

[10] This procedure remains in effect under the current regulations. Id. § 701.5(b)(4)(ii) (2009).

[11] Further, plaintiff's ability to pursue this review is triggered by receipt of the IGRC's dismissal. Plaintiff asserts, without contradiction, that he did not receive any such notice until March 2007. (Land Dep. 60, 72.) While inmates could generally pursue the next level of review absent timely resolution of their grievances, see N.Y. Comp. Codes R & Regs. tit. 7, § 701.8 (2005), that provision applied to administrative appeals, and no comparable provision applied to a grievant's ability to challenge a procedural dismissal via the IGPS. Finally, although the IGRC did not clearly state the basis for dismissal, the result was quite plainly authorized as plaintiff's "grievance is institutional in nature and affects a grievant who is no longer in the facility." Id. § 701.7(a)(5)(i)(d); see also id. § 701.3(k). Thus, even had plaintiff sought review of the dismissal by the IGPS, the IGPS could (and should) have simply cited the relevant "appeal after transfer" authority, making clear that plaintiff had no further administrative appellate remedy.

11

SO ORDERED.

Dated: New York, New York
April 23, 2009

_____
GERARD E. LYNCH
United States District Judge

Copy to:
Ricky Land
DIN # 01-A-4403
Great Meadow Correctional Facility
11739 State Route 22
P.O. Box 51
Comstock, New York 12832